IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRCIT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN M. LINHART, | ) | CIVIL COMPLAINT |
| | ) | |
| Plaintiff, | ) | CASE NO. 2:10-CV- |
| | ) | |
| v. | ) | JUDGE |
| | ) | |
| ZITELLI & BROADLAND, P.C., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT IN CIVIL ACTION**

AND NOW comes the Plaintiff, Steven M. Linhart, who files this civil complaint based upon the following facts and law.

**I.    JURISDICTION**

1. This case is brought pursuant to the Federal question in The Americans with Disabilities Act of 1990, as amended, Title 42 U.S.C. § 12101, et seq. ("ADA").

**II. THE PARTIES**

2. Plaintiff is Steven M. Linhart ("Linhart"), a former employee of the Defendant who resides at 1001 Vermont Street, White Oak, Pennsylvania 15131.

3. Defendant is Zitelli & Broadland, P.C., ("Zitelli & Broadland") and/or ("Defendant"), the former employer of Plaintiff who has a principal place of business located at Shadyside Medical Center, 5200 Centre Ave., Suite 303, Pittsburgh Pennsylvania 15232.

**III. FACTS**

4. Defendant hired Linhart on or about June 30, 2008 as a "Histotech."

1

5. The essential functions of the Histotech position is to work, seated, at a microtome and prepare slides of skin cancer tissue for microscopic examination by freezing and cutting thin sections of the tissue, mounting the tissues on the slides, and staining those slides with special dyes to make the details visible to a surgeon under a microscope.

6. Linhart learned of this employment opportunity through an acquaintance, Dave Hoffman ("Hoffman").

7. Linhart interviewed with Eric Stein, Defendant's Chief Histotech.

8. Linhart provided Stein with a truthful employment history.

9. Linhart also disclosed to Stein that he was suffering from significant back pain and hip pain and disclosed that he required the use of a cane for walking and standing and that he continued to seek treated.

10. When Linhart was hired, his back and hip pain, substantially limited one or more major life activities including but not limited to walking and sleeping and he was disabled within the meaning of the ADA.

11. Stein recommended to defendant that Linhart be hired based upon his interview and experience.

12. Upon securing employment with Defendant, Linhart resigned as Captain of the Elizabeth Township E.M.S. due to what he believed would be a more secure and steady employment opportunity.

13. Linhart's training consisted of several weeks of simply observing other Histotcechs prepare slides.

14. The training was informal and unsupervised and Linhart was permitted to sit and drink coffee while he observed other Histotechs prepare slides.

15. Defendant permitted Plaintiff to use his walking cane at work.

16. As Linhart began to prepare slides on his own, he was told he performed better than expected.

17. Dr. John A. Zitelli ("Zitelli") and Dr. David G. Broadland ("Broadland") both personally told Linhart that they were impressed with his performance.

18. Dr. Broadland told Linhart that it took most new Histotechs approximately one (1) year to perform at an acceptable level.

19. Dr. Broadland told Linhart that his performance was months ahead of what was expected of him.

20. Plaintiff performed well at work.

21. Plaintiff was not formally disciplined at work for any reason.

22. Early in his employment, Plaintiff admits he smoked a cigarette outside the facility, during his lunch break, and was told that smoking was not permitted and thereafter Plaintiff ceased smoking anywhere around the facility.

23. Despite his pain and reliance on a cane, Plaintiff successfully performed additional duties such as carrying metal surgical trays from the South Hills Medical Center to Jefferson Hospital.

24. Carrying trays consisted of a 20 to 25 minute walk, holding 10 metal surgical trays, and carrying them up 2 flights of stairs.

25. Eric Stein and Histotech, Jessica Orr ("Orr"), witnessed Linhart carrying the trays and became concerned and asked him whether he was sure he could continue to carry them.

26. Linhart responded that he could continue to carry them at his pace and deal with the pain.

27. Plaintiff continued to perform the essential functions of his job well and deal with his hip and back pain and seek appropriate medical care.

28. Linhart experienced occasions at work when there was a lack of work and requested additional work to stay busy.

29. On or about August 19, 2008, Linhart's Doctor, ("Dr. Kapakis") diagnosed his disability as vascular necrosis, a permanent condition, resulting at the time in right hip deterioration and pain.

30. Dr. Kapakis told Linhart he would require a right hip replacement.

31. On August 20, 2008, Linhart informed Stein about the hip replacement surgery.

32. Stein reacted positively and represented that defendant would be supportive.

33. Later in the day, Linhart told Dr. Zitelli he would require hip replacement surgery and provided details including that he had fluid in his leg.

34. Dr. Zitelli reacted with a clear negative facial expression and rudely walked away from the conversation.

35. Approximately two (2) hours later, Dr. Zitellei summoned Linhart into his office and terminated his employment.

36. Zitelli's only explanation to Linhart was, "I don't see you as being a good long term investment."

37. Linhart was convinced that his disability was the only factor considered by Zitelli in terminating his employment.

38. A female, Donna, and Stein witnessed the conversation.

39. Donna and Stein appeared upset by the termination.

40. Linhart was shocked.

41. Zitelli provided no written termination notice or supporting documents to Linhart.

42. Linhart was not provided any prior notice that he would not be a "good investment."

43. Before leaving, Steim told Linhart that his performance was not the reason he was terminated.

44. Linhart then asked Stein whether his hip was a factor in the decision to terminate his employment and Stein put his head down and began to get teary-eyed, signaling to Plaintiff that his hip was the only factor in Zitelli's decision to terminate his employment.

45. After terminating Plaintiff, Defendant replaced Plaintiff with persons who were not disabled.

46. Defendant had difficuly replacing Linhart and hired at least two (2) other histotechs in an attempt to permanently fill the position.

47. But for Zitelli's animus to Linhart's disability, Linhart would be working for defendant today.

48. As a result of the termination, Linhart lost full-time employment, earning $14.50 per hour, plus benefits.

49. Linhart had hip replacement surgery on September 12, 2008, prior to his health insurance ending with respondent.

50. Linhart never left the job market and mitigated his damages by acquiring comparable employment in October of 2009 as a mental health counselor II at Mon Yacht Community Services located in White Oak, Pennsylvania.

51. Mon Yacht Community Services hired Plaintiff knowing he is disabled with vascular necrosis and continued complications with his hips.

52. Plaintiff's disability is permanent and continues to substantially impair one or more major life activities such as walking, lifting and sleeping, etc.

### IV. THE AMERICANS WITH DISABILITIES ACT

53. Based upon the circumstantial and direct evidence, Linhart concludes that he was terminated because of his disability, vascular necrosis causing a deteriorated right hip, and/or his perceived disabilities in violation of the Americans with Disabilities Act ("ADA").

54. Plaintiff's disability substantially impairs one or more major life activities, including but not limited to sleeping, lifting, caring for ones self and walking.

55. Plaintiff's disability is permanent and continues to impair one or more major life activities.

56. Plaintiff also complains of discrimination due to being perceived as disabled through his disclosures of his limitations and pain, his required medical care, his use of a cane and his expressions of physical pain.

57. At all times, Linhart could perform the essential functions of his job with success.

58. Plaintiff complains in the alternative that defendant may have acted with a mixed, meaning that Plaintiff was unlawfully terminated in whole or in part, because of his disability and/or perceived disability.

WHEREFORE Plaintiff prays for a judgment against Defendant and all available relief.

### JURY TRIAL DEMANDED

Respectfully submitted,

ERIK M. YURKOVICH, ESQ.

PA ID 83432
Erik M. Yurkovich, Esq.
207 Pine Creek Road
Building 1, Ste. 201
Wexford PA 15090
T: 724-933-9199

Attorney for Steven M. Linhart

Case 2:10-cv-00530-NBF   Document 1   Filed 04/26/10   Page 7 of 7